UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DENIS TOUSSAINT (a.k.a. DENNIS
TOUSSAINT),

                           Petitioner,

    - against -

MERRICK GARLAND, in his official capacity as
Attorney General, U.S. Department of Justice;
ALEJANDRO MAYORKAS, in his official
capacity as Secretary, U.S. Department of
Homeland Security; THOMAS DECKER, in
his official capacity as Field Office Director, New York
City Field Office, Enforcement and Removal
Operations, U.S. Immigration and Customs
Enforcement; and CARL DUBOIS, in his official
capacity as Sheriff, County of Orange, State of New
York,

                           Respondents.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 21-CV-10904 (CS)

<u>Appearances</u>:

John H. Peng
Prisoners' Legal Services of New York
Albany, New York
*Counsel for Petitioner*

Rebecca R. Friedman
Assistant United States Attorney
Southern District of New York
New York, New York
*Counsel for Respondents*

<u>Seibel, J.</u>

      Before the Court is Petitioner Dennis Toussaint's petition for a writ of *habeas corpus*

pursuant to 28 U.S.C. § 2241.  For the following reasons, the petition is GRANTED.

## I.     BACKGROUND

Petitioner, a native of Saint Lucia and a lawful permanent resident of the United States,

petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, contending that his

mandatory and continued immigration detention violates his due process rights under the U.S.

Constitution and requesting either his immediate release from custody or a custody

redetermination hearing at which the Department of Homeland Security ("DHS") would bear the

burden of establishing by clear and convincing evidence that Petitioner is dangerous or a flight

risk.  (ECF No. 22 ("Am. Pet.") ¶¶ 1-5, 24, 38, 56.)  Respondents are Attorney General Merrick

Garland, Secretary of DHS Alejandro Mayorkas, Immigration and Customs Enforcement

("ICE") New York Field Office Director Thomas Decker, and Orange County Sheriff Carl

Dubois (together, the "Government"), in their official capacities.

### A.     Factual Background

The relevant facts are largely undisputed.  Petitioner is a 34-year-old native of Saint

Lucia who was admitted to the United States as a lawful permanent resident on June 23, 2006.

(*Id.* ¶¶ 6, 24.)  He has been convicted of several crimes in the United States, three of which are

the basis for the current removal proceedings:  On March 11, 2013, he pleaded guilty to one

misdemeanor count of criminal possession of a weapon in the fourth degree in violation of New

York Penal Law ("NYPL") § 265.01(2).  (Am. Pet. ¶ 25; ECF No. 25 ("Schultz Decl.") ¶ 6.)  On

February 24, 2015, he pleaded guilty to one felony count of assault in the second degree in

violation of NYPL § 120.05(2), and one felony count of criminal possession of a weapon in the

second degree in violation of NYPL § 265.03(3).  (Am. Pet. ¶ 25; Schultz Decl. ¶¶ 8-9.)[1]  For the

---

[1] In its papers, the Government describes other arrests and convictions, including a
January 2011 conviction on one count of resisting arrest, (Schultz Decl. ¶ 5), and a January 2014

February 2015 assault and weapons convictions, he received concurrent sentences of seven years' imprisonment and three years of supervised release.  (Schultz Decl. ¶ 9.)  Petitioner was incarcerated at the Great Meadow Correctional Facility, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), from February 24, 2015 until January 22, 2021.  (Am. Pet. ¶¶ 25, 27.)

On September 24, 2020, while Petitioner was still incarcerated, ICE served him with a Notice to Appear ("NTA") and initiated removal proceedings against him, as a noncitizen convicted of an aggravated felony, pursuant to Immigration and Nationality Act ("INA") section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).  (*Id.* ¶ 26; Schultz Decl. ¶ 10.)  On November 4, 2020, Petitioner appeared *pro se* before Immigration Judge Auh at the Downstate Correctional Facility in Fishkill, New York for an initial master calendar hearing.  (ECF No. 26-1; Schultz Decl. ¶ 11.)  Judge Auh adjourned the case to give Petitioner time to retain an attorney.  (ECF No. 26-1 at 6:7-10:11; Schultz Decl. ¶ 11.)  On January 6, 2021, according to the Government, Petitioner appeared with counsel for his second master calendar hearing before Immigration Judge Auh, and his counsel requested a further adjournment to allow for time to examine the record and prepare any motions or applications for relief.  (*Id.* ¶ 12.)  Immigration Judge Auh adjourned the case to March 3, 2021.  (*Id.*)

On January 22, 2021, Petitioner completed his state sentence, whereupon he was transferred from DOCCS custody to DHS custody and detained at the Buffalo Federal Detention Facility in Batavia, New York.  (Am. Pet. ¶ 27; Schultz Decl. ¶ 13.)  On January 26, 2021, ICE requested a venue change from the Downstate Correctional Facility Immigration Court to an

---

conviction on four counts of disorderly conduct, (*id.* ¶ 7).  None of these convictions are cited as grounds for Petitioner's removability.  (*See* ECF Nos. 23-1, 23-4.)

Immigration Court located in Batavia, which the Immigration Judge granted on January 29. (Schultz Decl. ¶ 14.)

On February 2, 2021, ICE served Petitioner with a document amending the NTA to add allegations that Petitioner is also removable under 8 U.S.C. § 1227(a)(2)(A)(ii) as a noncitizen convicted of two or more crimes not arising out of a single scheme of misconduct, and 8 U.S.C. § 1227(a)(2)(C) as a noncitizen convicted of certain firearm offenses. (ECF No. 1-4; *see* Am. Pet. ¶ 28; Schultz Decl. ¶ 16.)[2]

According to the Government, after an initial *pro se* appearance before the Batavia Immigration Court on January 29, 2021, (Schultz Decl. ¶ 15), Petitioner appeared with counsel for a master calendar hearing on February 3, 2021, where his counsel requested an adjournment to allow time to file a request for a custody redetermination hearing. (*Id.* ¶ 17.) On February 17, 2021, the Petitioner appeared with counsel for a custody redetermination hearing where the Immigration Judge found Petitioner subject to mandatory detention and denied bond. (*Id.* ¶ 18.)[3]

---

[2] Mr. Schultz's declaration erroneously states that this document is dated February 2, 2022, but the document itself is dated February 2, 2021. (*See* ECF No. 1-4.)

[3] The nature and extent of this hearing are unclear. The Government mentions the hearing only in passing, in the declaration of Deportation Officer Christopher Schultz and in its brief. (Schultz Decl. ¶¶ 17-18; ECF No. 24 ("Gov't Br.") at 5-6.) There is no transcript of this hearing in the record, nor does the Government provide any further details. Petitioner does not mention this hearing in any of his papers even though the Government's claim that there was a "custody redetermination hearing" in February 2021 would seem to belie his claim in the Amended Petition that "[i]n the nearly fifteen months he has been detained by the DHS, Mr. Toussaint has *never* received an adversarial custody redetermination hearing in front of a neutral arbiter." (Am. Pet. ¶ 32) (emphasis added). Nevertheless, the Government does not pursue this argument. (*See, e.g.*, Gov't Br. at 17 (detailing the process Petitioner received but omitting any mention of the custody redetermination hearing referenced in the fact section of their brief and in Mr. Schultz's declaration)). In any case, the Government does not state or suggest that the Immigration Court made any findings at this hearing, which occurred sixteen months ago, regarding Petitioner's danger to the community or risk of flight. It thus appears that this hearing was limited to determining whether Petitioner's criminal record mandated detention under 8 U.S.C. § 1226(c).

4

On February 24, 2021, Immigration Judge Aikman sustained the charges of removability under 8 U.S.C. § 1227(a)(2)(A)(ii-iii), but not the charge under 8 U.S.C. § 1227(a)(2)(C).  (ECF No. 26-2 at 35:3-6; Schultz Decl. ¶ 19.)  At the same proceeding, the Immigration Judge adjourned the case to allow Petitioner to submit applications for relief.  (ECF No. 26-2 at 35:25-36:21; Schultz Decl. ¶ 19.)

At a hearing on March 10, 2021, Petitioner's counsel informed Immigration Judge Aikman that he was in the process of evaluating whether he would move for a mental competency hearing.  (ECF No. 26-3 at 40:15-21; Schultz Decl. ¶ 20.)  On March 31, 2021, Petitioner filed a motion requesting such a hearing, which was held on April 15, 2021, and at which Immigration Judge Aikman found Petitioner competent to proceed.  (Schultz Decl. ¶¶ 21-22.)  On April 20, 2021, Petitioner appeared again with counsel for an individual merits hearing on his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), all of which were denied.  (Am. Pet. ¶ 29; Schultz Decl. ¶ 23.)  Both Petitioner and ICE filed timely notices of appeal.  (Schultz Decl. ¶ 24; *see* Am. Pet. 29.)  The Board of Immigration Appeals ("BIA") set a briefing schedule on May 20, 2021 and on May 28, 2021, Petitioner filed a request to extend the briefing deadline, which the BIA granted.  (Schultz Decl. ¶¶ 24-25.)  On June 24, 2021, both parties filed timely appeal briefs.  (Am. Pet. ¶ 29; Schultz Decl. ¶ 25.)

On June 15, 2021, Petitioner was transferred to the Hudson County Jail in Kearny, New Jersey.  (Am. Pet. ¶ 30; Schultz Decl. ¶ 26.)  On October 7, 2021, Petitioner was transferred to the Orange County Correctional Facility ("OCCF") in Goshen, New York, and placed in a housing unit for immigration detainees that is separate from the unit for criminal inmates.  (Am. Pet. ¶ 30; Schultz Decl. ¶ 27.)

5

On October 18, 2021, while his BIA appeal was still pending, Petitioner applied for a U Visa, (Am. Pet. ¶ 31; Schultz Decl. ¶ 28), and, on January 14, 2022, submitted a request to ICE for release based on his pending application for relief as well as health conditions, (Schultz Decl. ¶ 29). The former request remains pending, (*id.* ¶ 28), but on February 4, 2022, ICE denied the latter request, finding that Petitioner was a threat to public safety and that his medical conditions were being adequately managed by ICE and OCCF medical staff, (*id.* ¶ 29).

On the same day, the BIA remanded the case for further evaluation of Petitioner's request for protection under the CAT, finding that the Immigration Judge had failed to adequately consider Petitioner's evidence and erred in considering evidence not in the record without giving Petitioner an opportunity to respond to that evidence. (ECF No. 22-1; *see* Schultz Decl. ¶ 30.)

According to the Government, Petitioner has appeared for four master calendar hearings before the Immigration Judge since the BIA granted his appeal and remanded the case. (Schultz Decl. ¶¶ 31-34.) On March 8, 2022, Petitioner's counsel requested an adjournment to determine whether an individual merits hearing would be required or if Petitioner would file additional evidence. (*Id.* ¶ 31.) On March 15, 2022, Petitioner's counsel requested an adjournment so he could submit additional evidence. (*Id.* ¶ 32.) On April 6, 2022, Petitioner's counsel requested further additional time to submit a written closing argument because he was not prepared to give oral argument. (*Id.* ¶ 33.) On April 19, 2022, Petitioner appeared for his fourth master calendar hearing and both parties filed closing arguments. (*Id.* ¶ 34.) The Immigration Judge adjourned the case to issue a written decision, which remains forthcoming. (*Id.*)

As of the date of this Opinion and Order, Petitioner has been in ICE's custody for over seventeen months. (Am. Pet. ¶ 32; Schultz Decl. ¶ 13.)

B.    **Procedural History**

On December 20, 2021, Petitioner filed his initial *habeas* petition pursuant to 28 U.S.C.

§ 2241.  (ECF No. 1.)  On April 21, 2022, Petitioner amended his petition.  (ECF No. 22.)  He

challenges his detention as unreasonably prolonged in violation of his Constitutional right to due

process, and he asks this Court to either require ICE to release him or order a custody

redetermination hearing.  (Am. Pet. ¶¶ 4-5.)  On May 4, 2022, the Government filed opposition

papers, (ECF Nos. 23-25), and on May 25, 2022, Petitioner filed reply papers, (ECF No. 26).

II.   **DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a

petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"

*Mu-Xing Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).

Under this provision, federal courts may hear claims by noncitizens challenging the

constitutionality of their detention.  *Boumediene v. Bush*, 553 U.S. 723, 771 (2008); *Demore v.*

*Hyung Joon Kim*, 538 U.S. 510, 516-17 (2003).

Petitioner argues that his mandatory and continued detention pursuant to 8 U.S.C.

§ 1226(c) violates his Fifth Amendment due process rights and that he is entitled to an

adversarial hearing to challenge his custody and detention.  (Am. Pet. ¶¶ 1-5.)  He further

contends that at such a bond hearing the Government must show, by clear and convincing

evidence, that he is a danger to the community or a risk of flight, (*id.* ¶ 56), and that in evaluating

whether he is a flight risk, the Immigration Judge should consider Petitioner's ability to post a

bond and alternatives to detention, (*id.* ¶ 58; ECF No. 26 ("Pet. Reply") at 16 n.5).

7

A.    **Due Process**

DHS is authorized under federal law to arrest and detain noncitizens in the United States who are believed to be removable.  8 U.S.C. § 1226(a).  Pending a removal decision, the noncitizen may be detained or released on bond or conditional parole.  *Id.*  Even if detained, an immigration judge may conduct a bail hearing to determine whether the noncitizen should be released or detained while removal proceedings are pending.  *Lora v. Shanahan*, 804 F.3d 601, 608 (2d Cir. 2015), *vacated on other grounds*, 138. S. Ct. 1260 (2018) (mem.).  But under 8 U.S.C. § 1226(c), certain classes of noncitizens – including those who have committed "crimes of moral turpitude," offenses involving controlled substances, aggravated felonies, firearms offenses, or acts of terrorism – are subject to mandatory detention and may not be released on bond.  *See* 8 U.S.C. § 1226(c)(1)(A)-(D); *id.* § 1227(a)(2)(A)-(F); *Doe v. Decker*, No. 20-CV-4232, 2020 WL 4937395, at *4 (S.D.N.Y. Aug. 21, 2020).  The Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  *Demore*, 538 U.S. at 523.

But "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Id.* at 523 (cleaned up).  Further, "[f]reedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[P]rolonged mandatory detention under § 1226(c), under certain circumstances . . . can become unreasonable such that an alien is 'entitled to an individualized determination as to his risk of flight and dangerousness.'"  *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266, at *9 (S.D.N.Y. May 23, 2018) (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)).  "Thus, where there has been a prolonged mandatory detention of an alien under 8 U.S.C. § 1226(c),

without access to a bond hearing, federal courts have found that the habeas petitioner's Fifth Amendment Due Process rights were violated." *Hylton v. Decker*, 502 F. Supp. 3d 848, 853 (S.D.N.Y. 2020) (collecting cases).  And even where an initial bond hearing has been held, "the Supreme Court has made clear that due process requires periodic review of detention in civil proceedings," *Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *5 n.6 (S.D.N.Y. Aug. 7, 2018), and so "periodic review hearings must be available if an alien's prolonged detention continue[s]," *id.* (citing *Zadvydas v. Davis*, 533 U.S. at 701).

To determine whether prolonged mandatory detention under § 1226(c) is unreasonable, and thus constitutes a due process violation, courts in this District conduct a case-by-case analysis, *see id.* (collecting cases), that considers a number of factors:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made [the petitioner] removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Gil Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018); *see Sajous*, 2018 WL 2357266, at *10-11; *Manrique Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018); *Jaimes Hernandez v. Decker*, No. 18-CV-5026, 2018 WL 3579108, at *6-7 (S.D.N.Y. July 25, 2018).  Some courts also consider the interests served by the petitioner's continued detention.  *See Graham v. Decker*, No. 20-CV-3168, 2020 WL 3317728, at *5, (S.D.N.Y. June 18, 2020) (applying a similar but slightly different set of factors, including interests served by continued detention); *Yusuf v. Edwards*, No. 18-CV-3605, 2019 WL 4198798, at *7 (S.D.N.Y. July 2, 2019) (same); *Arce-Ipanaque v. Decker*, No. 19-CV-1076, 2019 WL 2136727, at *1 (S.D.N.Y. May 15, 2019) (same).  Applying these factors here, the Court concludes that Petitioner is entitled to an individualized bond hearing.

"The first, and most important factor . . . is the length of time the alien has already been detained." *Sajous*, 2018 WL 2357266, at \*10.  While there is no bright-line rule in this Circuit, "detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." *Id.*; *see Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) ("Courts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months.") (cleaned up).  Here, Petitioner has been detained by DHS for over seventeen months.  (*See* Am. Pet. ¶ 6.)  Therefore, while not dispositive, this factor weighs in favor of granting Petitioner a bond hearing.

Under the second factor, the Court considers who is responsible for any delay in the proceeding.

> If the alien has requested several continuances or otherwise delayed immigration proceedings, it is less likely that the length of his detention could be deemed unreasonable because aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute.

*Sajous,* 2018 WL 2357266, at \*10 (cleaned up).  On the other hand, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable." *Id.*; *see Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by [ICE] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.").

While Petitioner has requested multiple adjournments, (*see* Am. Pet. ¶ 29; Schultz Decl. ¶¶ 11-22), there is "no evidence that the petitioner has delayed the proceedings unreasonably." *Hylton*, 502 F. Supp. 3d at 854.  Rather, Petitioner has merely taken advantage of the level of process to which he is entitled.  After an initial delay to obtain counsel, the Immigration Judge

granted a series of short adjournments which allowed Petitioner to examine the record, prepare for a redetermination hearing, file applications for relief from removal, move for and conduct a mental competency hearing, and prepare for an individual merits hearing on his applications for asylum, withholding of removal, and protections under the CAT – all of which, combined, took less than three months.  (*See* Schultz Decl. ¶¶ 14-15, 17, 19-23.)  While it appears that Petitioner sought and received one extension of the briefing schedule before the BIA, (*id.* ¶¶ 24-25), and sought and received several short adjournments (totaling six weeks) in post-remand proceedings, (*id.* ¶¶ 31-34), none of those requests delayed proceedings for any significant amount of time. Nor is there any indication that they were sought in bad faith or in a deliberate or improper attempt to manufacture delay or game the system.  In short, Petitioner's pursuit of relief does not "undermine a claim that [his] detention is unreasonably prolonged."  *Jaimes Hernandez*, 2018 WL 3579108, at *9.

The Government argues that Petitioner "'may not rely on the extra time resulting [from his pursuit of legal remedies] to claim that his prolonged detention violates substantive due process,'" (Gov't Br. at 17) (alteration in original) (quoting *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991)), but the case on which it relies involved years-long gamesmanship, including switching back and forth between delay tactics and requests for expedition.  *See Doherty*, 943 F.2d at 211.  In circumstances like those presented here, Petitioner cannot "be penalized for using procedural remedies available to him," *Gil Cabral*, 331 F. Supp. 3d at 261; *see Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018), *as amended* (May 22, 2018) (distinguishing "immigrant who has substantially prolonged his stay by abusing the processes provided to him" from "immigrant who simply made use of the statutorily permitted appeals process") (cleaned up).  This is particularly so where much of the delay in the adjudication of

this case is attributable to the 226 days the BIA took to decide Petitioner's appeal, which was partially successful, and the fact that the matter is now on remand because the Immigration Judge's opinion, according to the BIA, did "not reflect that she adequately considered the respondent's evidence" and "erred in relying on country conditions evidence that was not in the record." (ECF No. 22-1 at 4.)[4]  While there is no indication that the Government or the Immigration Court acted in anything but good faith, it remains the case that the clock has been reset on the process due to circumstances that cannot be fairly attributed to Petitioner. Accordingly, this factor is neutral at best, and likely weighs somewhat in Petitioner's favor.

The third factor is whether the petitioner has asserted defenses to removal.  "If an alien has not asserted any grounds on which his removal may be cancelled, he will presumably be removed from the United States eventually." *Sajous*, 2018 WL 2357266, at *11.  In that case, "detaining the alien will always at least marginally serve 'the ultimate purpose behind the detention,' and the continued detention of the alien will be more reasonable than if the alien had at least some possibility of remaining in the country." *Id.* (quoting *Demore*, 538 U.S. at 531 (Kennedy, J., concurring)).  But if a petitioner has asserted a viable defense to removal, "[t]he Court need not inquire into the strength of these defenses – it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." *Id.*  Petitioner's request for relief under the CAT is a valid defense to removal, *see Doe v. Decker*, No. 21-CV-5257, 2021 WL 5112624, at *3 (S.D.N.Y. Nov. 3, 2021);[5] while that

---

[4] Citations to this document refer to the page numbers generated by the Court's electronic filing system.

[5] The Government is correct, however, that Petitioner's pending U Visa application is not a defense to removal.  *See Keisy G.M. v. Decker*, No. 21-CV-4440, 2021 WL 5567670, at *12

application is still being adjudicated, Petitioner's eventual removal is not inevitable.

Accordingly, the third factor weighs in Petitioner's favor.

The fourth factor is whether the petitioner's immigration detention has exceeded the time the petitioner spent in criminal custody.  Given that his time in immigration detention has not yet surpassed his criminal sentence, Petitioner concedes that this factor weighs against granting him a bond hearing.  (Am. Pet. ¶ 47.)

Under the fifth factor, the Court considers whether the facility where the petitioner is being detained is meaningfully different from a penal institution for criminal detentions. Petitioner is currently detained in an immigration-only unit at the OCCF in Goshen, New York. (Am. Pet. ¶ 2; Schultz Decl. ¶ 27.)  The Second Circuit has noted that "civil immigration detainees [at OCCF] are housed in conditions similar to those experienced by detainees awaiting trial on criminal charges," *Charles v. Orange County*, 925 F.3d 73, 78 n.3 (2d Cir. 2019), and has described the deprivation of liberty for immigration detainees at OCCF to be "substantial," *Velasco Lopez v. Decker*, 978 F.3d 842, 851-52 (2d Cir. 2020).  In accord with these descriptions, Petitioner contends that the conditions in the immigration housing unit, and the restrictions placed on the detainees, are not meaningfully distinguishable from those of a penal institution.  (Am. Pet. ¶ 48; s*ee* Pet. Reply at 14-15.)  The Government points out that immigration detainees are segregated, but does not otherwise suggest the restrictions are any different from those faced by prisoners.  (Gov't Br. at 20.)  Accordingly, this factor weighs in Petitioner's favor.  *See, e.g.*, *Black v. Decker*, No. 20-CV-3055, 2020 WL 4260994, at *8 (S.D.N.Y. July 23, 2020) (fifth factor weighed in petitioner's favor where he was "detained at a

_____

(S.D.N.Y. Nov. 29, 2021), *appeal filed sub. nom. Guerrero Mariano v. Decker*, No. 22-70 (2d Cir. Jan. 11, 2022).

penal institution – the Orange County Correctional Facility"); *Graham*, 2020 WL 3317728, at *7 (to similar effect); *Arce-Ipanaque*, 2019 WL 2136727, at *2 (to similar effect).

The sixth factor relates to the nature of the crime the petitioner committed and whether it is a serious offense. Petitioner concedes that the assault and weapons convictions that led to his incarceration and removal proceedings weigh against him. (Am. Pet. ¶ 49.) There is no question that these serious offenses are "indicative of dangerousness." *McDonald v. Feeley*, 535 F. Supp. 3d 128, 138 (W.D.N.Y. 2021).

The seventh factor looks at whether the petitioner's detention is near its conclusion. Currently, Petitioner's case has been adjourned while the Immigration Judge issues a written decision. (Schultz Decl. ¶ 34.) If the Immigration Judge again rules against Petitioner, further appeals are likely to follow, making it unclear when a decision relating to his removal would be final. Therefore, this factor likely weighs in favor of Petitioner or is, at a minimum, neutral. *See Graham*, 2020 WL 3317728, at *7; *Gutierrez v. Dubois*, No. 20-CV-2079, 2020 WL 3072242, at *10 (S.D.N.Y. June 10, 2020).

Finally, some courts consider "the interests served by continued detention." *Manrique Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018). Here, Petitioner is requesting a process: a bond hearing at which an immigration judge would consider whether he is a danger to the community or a risk of flight such that no alternatives exist to detention. "At bottom, the minimal burden that a bond hearing would place on the Government is far outweighed by [Petitioner's] interest in ensuring that his continued detention is justified." *Arce-Ipanaque*, 2019 WL 2136727, at *2 (cleaned up). "While the government unquestionably has a legitimate interest in preventing criminal aliens from fleeing or committing additional crimes during the pendency of their removal proceedings, those are the very questions that will

be addressed and determined – on an individualized basis – at the bond hearing that [Petitioner] seeks." *Yusuf*, 2019 WL 4198798, at *9 (cleaned up); *see Graham*, 2020 WL 3317728, at *7 ("Enabling [Petitioner] to articulate his arguments at a bond hearing works no consequential injury on the Government."). Therefore, this factor also weighs in favor of granting Petitioner a bond hearing.

In sum, while Petitioner's crimes are serious, he has been detained for almost a year and a half, and the delay in the processing of his case is not attributable to his own wrongful behavior; rather, he is effectively back at square one after the BIA remanded the case. Further, he has raised a defense to removal, and it is not a given that he will eventually be removed. On balance, the relevant factors, taken together, tip toward the conclusion that Petitioner's continued detention without a bond hearing is unreasonable. "Therefore, due process requires the petitioner's release or a bond hearing to determine if the petitioner is a danger to the community or a risk of flight." *Gil Cabral*, 331 F. Supp. 3d at 262.

## B. Procedural Requirements for Petitioner's Bond Hearing

The Court now addresses the procedural protections Petitioner wishes to have at his bond hearing. Petitioner first argues that the Government should be required to prove by clear and convincing evidence that he is a danger to the community or a risk of flight. (Am. Pet. ¶ 56.) In opposition the Government argues that Petitioner's contention is contrary to the statutory scheme. (Gov't Br. at 21-22.) But the question here is one of due process under the Constitution. *See Joseph v. Decker*, No. 18-CV-2640, 2018 WL 6075067, at *12 (S.D.N.Y. Nov. 21, 2018). "[T]he 'overwhelming majority' of courts have concluded, post-*Jennings*, that when unreviewed detention has become unreasonable, the government must bear the burden of proof at a bond hearing by clear and convincing evidence, to ensure the preservation of the

detainees' fundamental liberty interests." *Id.* (collecting cases); *see Guerrero v. Decker*, No. 19-CV-11644, 2020 WL 1244124, at *4 (S.D.N.Y. Mar. 16, 2020) ("[G]iven the important constitutional interests at stake, and the risk of harm in the event of error, it is appropriate to require the Government to bear the burden [of proof by clear and convincing evidence], particularly in light of long-established Supreme Court precedent affecting the deprivation of individual liberty . . . .").[6]  I believe the Second Circuit would agree.  *See Lora*, 804 F.3d at 616 ("[T]he detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community.")[7]

Additionally, in his petition Petitioner argues that the Court should require the Government to prove that no amount of bond or conditions of release would secure Petitioner's compliance with future immigration orders when evaluating whether he is a flight risk.  (Am.

---

[6] In *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018), the Supreme Court held, as a matter of statutory (but not constitutional) interpretation, that § 1226 did not require the Government to show danger or flight risk by clear and convincing evidence.  Similarly, in *Johnson v. Arteaga-Martinez*, the Court did not address any constitutional questions and held, as a statutory matter, that a noncitizen detained for six months pursuant to § 1231(a)(6) is not entitled to a bond hearing where the Government bears the burden of proof.  No. 19-896, 2022 WL 2111342, at *5-6 (U.S. June 13, 2022).

[7] The Government argues that *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) – in which the Second Circuit held that the government bears the burden of proof by clear and convincing evidence at bond hearings for non-criminal noncitizens pursuant to § 1226(a) – should not be extended to § 1226(c) detentions, (Gov't Br. at 22-23), highlighting that *Velasco Lopez* emphasized that § 1226(c) detainees already receive the full process due to criminal defendants, (*id.* at 22 (quoting *Velasco Lopez*, 978 F.3d at 850 n.7)).  But that reference occurred in the court's discussion of whether a hearing was required in the first place.  It did not relate to the court's discussion of what the burden should be at the hearing.  On the latter issue, the court concluded, "We believe that it is improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty," *Velasco Lopez*, 978 F.3d at 856, without noting any distinction between noncitizens who had been criminally convicted and those who had not.

Pet. ¶ 58.)  The Government argues that bond amount and conditions of release come into play only if the Court finds that the noncitizen is not a danger to the community, (Gov't Br. at 23-25), and Petitioner in his reply clarifies that he is in "accord[] with [the Government's] view" and only asks that "should the immigration judge find Mr. Toussaint does not pose a danger risk, she or he should then consider alternatives to detention and ability to pay when considering any flight risk Mr. Toussaint may pose," (Pet. Reply at 16 n.5).  As the parties agree on this condition, the Court imposes it.

Accordingly, at the individualized bond hearing the Government must prove, by clear and convincing evidence, that Petitioner is a flight risk or a danger to the community.  Additionally, should the Immigration Judge conclude that Petitioner is not a danger to the community, that judge should consider Petitioner's ability to pay and conditions of release in considering risk of flight.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's petition is GRANTED.  The Government is ordered to hold a bond hearing in accordance with this decision within fourteen days or release Mr. Toussaint on his own recognizance.  The Clerk of Court is respectfully directed to enter judgment for Petitioner and close the case.

**SO ORDERED.**

Dated: June 30, 2022
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.